**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| BYRON GODWIN and CHARLES NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:12cv164-WHA-CSC |
| | ) | |
| AL KELLEY, in his individual capacity, | ) | (wo) |
| DOUG BURKHALTER, in his individual | ) | |
| capacity, and CITY OF MILLBROOK, | ) | |
| ALABAMA, a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND AND PROCEDURAL HISTORY**

This case is before the court on the Defendants' Motion to Enforce Settlement Agreement (Doc. #41), a Motion to Interplead Funds (Doc. #50), and the Plaintiffs' Motion for Relief From Judgment (Doc. #58).

The Plaintiffs originally filed a Complaint in this case bringing 42 U.S.C. § 1983 and state law claims against the Defendants City of Millbrook, Al Kelley, and Doug Burkhalter ("Defendants").

After the Defendants filed a Motion for Summary Judgment, the case was mediated before a United States Magistrate Judge.  The mediation took place on February 15, 2013, but concluded without a settlement.

On February 28, 2013, a Joint Stipulation for Dismissal was filed in this court by then-counsel for the Plaintiffs stating that the "parties have agreed to dismiss this case in its entirety

and jointly stipulate to its dismissal with prejudice," and asking the court to dismiss the case, each party to bear its own costs.  The court entered an order dismissing the case with prejudice, the parties to bear their own costs, and denying the pending Motion for Summary judgment as moot.

On March 7, 2008, counsel for the Defendants filed a Motion to Enforce Settlement Agreement, stating that although checks had been issued to the Plaintiffs in payment of the settlement, the Plaintiffs had refused to sign a Release of their claims or accept the settlement funds.

The court set the Motion to Enforce Settlement for an evidentiary hearing.  Then-counsel for the Plaintiffs, Anthony Bush ("Bush") and Peyton Faulk ("Faulk") subsequently filed motions to withdraw as counsel.  At the evidentiary hearing on March 14, 2013, the court allowed then-counsel for the Plaintiffs to withdraw from representation of the Plaintiffs, continued the hearing, and gave the Plaintiffs additional time in which to secure counsel.

At the re-scheduled hearing, new counsel for the Plaintiffs requested additional time to prepare for the evidentiary hearing.  The hearing was re-scheduled.

On April 15, 2013, the court conducted an evidentiary hearing on the Motion to Enforce Settlement.  The court heard testimony from Plaintiffs's two former counsel, the two Plaintiffs, and Defense counsel about the negotiations of the purported settlement the Defendants now seek to enforce.

During the re-scheduled evidentiary hearing on the Defendants' Motion to Enforce Settlement Agreement held on April 15, 2013, counsel for the Plaintiffs raised for the first time the issue of the court's jurisdiction to enforce settlement in the absence of any reference to a

settlement agreement or the court's retention of jurisdiction in the Stipulation of Dismissal or the court's February 28, 2013 Order dismissing the case with prejudice. Plaintiffs's counsel represented that she would file a motion to set aside the judgment if the court lacked jurisdiction to enforce the settlement agreement. The court subsequently ordered Plaintiffs' counsel to file that motion on or before April 19, 2013, and gave the Defendants time to respond to that motion. The Plaintiffs filed a Motion for Relief from Judgment (Doc. #58), with evidentiary materials which had not been submitted during the evidentiary hearing.

This cause is now before the court on all pending motions, the Defendants' and the Plaintiffs' Motions, and the evidence presented at the evidentiary hearing and filed by the Plaintiffs.

## II. FACTS

The facts relevant to the pending motions are as follows:

After the conclusion of the unsuccessful mediation on the morning of February 15, then-counsel for the Plaintiffs spoke to both Plaintiffs and to counsel for the Defendants about terms for a settlement agreement.

Former counsel for the Plaintiffs, Bush, testified at the evidentiary hearing that, after several telephone conversations with his clients that afternoon, he was finally authorized by the Plaintiffs, Charles Nelson ("Nelson") and Byron Godwin ("Godwin"), that afternoon or evening to settle the case for a certain monetary amount.[1] Bush testified that Nelson agreed to an amount but also said during the same conversation that he would settle for that amount as long as he also

---

[1] The court will not recite the monetary amounts in this Memorandum Opinion and Order, but notes that it is this court's practice to not enforce confidentiality agreements contained within settlement agreements entered into by public entities.

was "not prohibited from working" in the City of Millbrook.  Bush subsequently testified that

Nelson's words were that he would settle if he "can work" in the City of Millbrook.   Bush then

characterized this authority as settling the case for the monetary amount as long as Godwin and

Nelson "can apply for a business license or apply for building permits in the City of Millbrook."

Bush went on to testify that either he or Faulk contacted the attorney for the Defendants

later on February 15 and told him that the Plaintiffs would settle for the specified monetary

amount "as long as the Plaintiffs were not prohibited from working in the City of Millbrook."

Bush testified that the purpose was to get the Plaintiffs in a position so that they could apply for a

license and permits and work in Millbrook.  He then testified that Nelson called him on February

18 and told him that it was going to cost the Defendants more money "if they don't want me to

work in the City of Millbrook" and that he wanted a higher amount "if they do not allow me to

work in Millbrook."  Bush testified that at that point he had "two parameters for settlement, $(_)

if they allow me to work in Millbrook, $(_) if the don't allow me to work in Millbrook."

Nelson testified at the evidentiary hearing that on February 15 he told his counsel that he

wanted a higher monetary amount than that testified to by his former counsel.  He also said that

his attorney called him on February 18 and said that the City Council had approved an amount

but that Nelson would not be given a business license.   Nelson testified that he told his attorney,

Bush, on February 18th that if he could not have a business license, he would only settle for a

greater specified amount.

Bush testified that on Monday, February 18th, the attorney for the Defendants called and

told him the specified monetary amount was accepted and the Plaintiffs are "allowed to work" in

Millbrook, but language for the settlement agreement had to be worked out.

4

The release worked out by the attorneys was characterized by Bush at the evidentiary hearing as allowing Nelson to reapply for a business license and a building permit.  The language of the release, provided to the court at the hearing, contains a provision regarding a procedure by which Nelson could apply for a license which, for the first application, is different from that ordinarily followed.  The procedure provides for application directly to the City Council for consideration, but would allow for denial of Nelson's application by the Council, with a right to appeal a denial to the state circuit court.

Nelson did not hear from his attorneys about the settlement until February 28.  He testified that he was contacted by his attorney, Faulk, on February 28 and she asked the Plaintiffs to come in on March 1 and sign a release.  The Plaintiffs refused.  Nelson testified at the evidentiary hearing that he was not aware that a Stipulation of Dismissal was filed in this court on February 28.  Nelson also testified that the paragraph in the release regarding applying for licenses, which he saw for the first time after the case was set for the hearing on the Motion to Enforce, does not give him the right to work in Millbrook.  He testified at the hearing that the release just provides a procedure to follow to apply for a license, but he already has the right to apply, and the Defendants can simply deny it.   Nelson said the Defendants have never denied him the right to apply for a license, they have denied him the right to have a license.  When asked directly by the court if a specified monetary amount and a business license would have been what he had authorized in settlement, Nelson agreed that that would have settled the case.

Counsel for the Defendants also testified at the evidentiary hearing and was asked whether the Plaintiffs themselves had given him any indication of their attorneys' authority to settle, to which he responded that there was never any question in his mind that the attorneys had

authority.

### III.  DISCUSSION

The Plaintiffs have asked this court to set aside the judgment it entered dismissing this case because they did not sign a settlement agreement, did not agree to the terms of the proferred settlement, and did not agree to dismiss their case.  The Defendants have agreed that the case is due to be reopened pursuant to Rule 60(b) for the purpose of ruling on the Motion to Enforce the Settlement Agreement.  (Doc. #60 at p.3).  This court agrees that relief from judgment pursuant to Rule 60(b)(6) is justified in this case.  *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000).  The Rule 60b(b) motion is therefore due to be GRANTED, and the judgment in this case set aside.

The court having jurisdiction to rule on the Motion to Enforce the Settlement Agreement once the judgment is set aside, *see Kent v. Baker*, 815 F.2d 1395, 1400 (11th Cir. 1987), the court now addresses the Motion to Enforce the Settlement Agreement.

The Defendants maintain that former attorneys for the Plaintiffs, Bush and Faulk, had authority to, and entered into, a settlement agreement with the Defendants.   "In the Eleventh Circuit, state law governs the scope of an attorney's authority to enter into a settlement agreement." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994). "Section 34-3-21, Ala.Code 1975, governs the validity and enforcement of settlement agreements reached between parties at the trial-court level." *Mays v. Julian LeCraw and Co., Inc.*, 807 So.2d 551, 554 (Ala. Civ. App. 2001).   Under that statute, an attorney has authority "to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." *Id.* (quoting Ala. Code § 34-3-21).  Under

6

Alabama law, however, an attorney's authority to enter into a settlement agreement is limited, and an attorney must have "express, special authority from his client to do so." *Benitez v. Beck*, 872 So.2d 844, 847 (Ala. Civ. App. 2003).  An agent's apparent authority must be founded upon the conduct of the principal and not upon the conduct of the agent.  *Id.*; *see also Batton v. City of Jasper, Ala.*, 354 F. App'x 400, 401-02 (11th Cir. 2009).

An Alabama case analyzing the scope of authority to settle is instructive in this case.  *See Blackwell v. Adams*, 467 So. 2d 680 (1985).  In *Blackwell*, the plaintiff authorized his attorney only to negotiate for a specific provision in settlement, but when he saw the judgment entered after the attorneys informed the court of the terms of settlement, the plaintiff said that it included a provision he had not agreed to.   In reviewing the trial court's denial of a motion to alter the judgment, the Supreme Court examined the law regarding the authority of an attorney to enter into a settlement agreement, and found that the uncontroverted facts were that the plaintiffs did not authorize their attorney to consent to the provision in question.  *Id.* at 685.  The court remanded the case with instructions to set aside the judgment.  *Id.*; *see also Batton v. City of Jasper*, 354 F. App'x 400, 402 (11th Cir. 2009) (remanding case for the district court to determine whether the plaintiff expressly authorized her attorney to accept the settlement agreement the defendants proffered to the court).

Applying the *Blackwell* court's analysis in this case, this court must examine the scope of Bush and Faulk's authority relative to the agreement sought to be enforced.  As set forth above, there is no dispute that the specified monetary amount was not the only condition to settlement. The additional condition was characterized in different ways by Bush at the evidentiary hearing: the absence of a prohibition against applying for, and the permission to apply for, a business

license.  Bush also quoted Nelson as requiring a condition that he "can work" in Millbrook.  And, he testified that after a telephone conversation with Nelson on February 18, he had two parameters for settlement: one amount "if they allow me to work in Millbrook" and a higher amount "if they don't allow me to work in Millbrook."  It does not appear that Bush had a clear understanding of just what Nelson, and Godwin, expressly authorized.  The alleged settlement sought to be enforced was for the lower amount of the "parameters" but required a procedure under which Nelson might, or might not, be given a business license allowing him to work in Millbrook.

Nelson testified at the evidentiary hearing that he, like the plaintiff in *Blackwell*, did not agree to the license application procedure included in the General Release.  Nelson testified that he did not agree with the procedure because it did not change his situation, because he will be denied a license if he applies for one under that procedure.  Nelson stated that he did not feel mere permission to apply for a license was a sufficient basis for settlement because he had permission to apply for a license even in the absence of a settlement.

Testimony at the hearing supports a finding that an expectation that the City would agree to a settlement which included the guarantee of a business license was not realistic because there is a set of criteria that applicants must meet before they are given a license.  Bush testified that he could only provide that Nelson would have the ability to go through the process like any other applicant.   Whether or not Nelson's requirement of a license was realistic, that appears to have been what he authorized when he spoke to his attorney.  While the attorney used different terminology to refer to this condition, he acknowledged that for the lower specified amount, Nelson wanted an agreement that he "can work" in Millbrook.   As stated above, when asked

8

directly by the court if a specified monetary amount and a business license would have been what he had authorized in settlement, Nelson agreed that that would have settled the case.

There was no testimony to support a finding that the Plaintiffs authorized the license application provision in the agreement, or gave apparent authority for their attorneys to do so. It is undisputed that the Plaintiffs were not shown, and did not sign, the language of the General Release of All Claims and Indemnity Agreement, including the paragraph which governed the process for application for licenses, before the Stipulation of Dismissal was filed. The Defendants's attorney was made aware that there was a condition of settlement in addition to the monetary amount. Also, there was no testimony presented at the evidentiary hearing to support a finding that the Plaintiffs gave apparent authority to their attorneys to agree to the application procedure. In addition, it is undisputed that the Defendants' attorney never received a signed General Release of All Claims and Indemnity Agreement. The court must conclude, therefore, that Defendants have failed to prove that the Plaintiffs' attorneys had authority from the Plaintiffs to enter into the agreement which was entered into by the attorneys to settle the case.[2]

In reaching this conclusion, the court does not intend to suggest wrongful motives or unethical acts by any of the attorneys involved. The court is satisfied that the defense counsel had reason to assume from the actions of Plaintiffs' counsel that Plaintiffs' counsel had full authority to reach the specific provisions included in the agreement reflected in the release which Plaintiffs did not sign, and that Plaintiffs' then-counsel may have been acting in what they

---

[2] The burden of proof is on the parties seeking to enforce the settlement agreement. *See, e.g., Paterson & Edey Lumber Co. v. Carolina-Portland Cement Co.*, 112 So. 245, 250 (Ala. 1927) (holding that plaintiff seeking to enforce contract had the burden to prove there was a binding and enforceable contract).

thought were the best interests of their clients and under the belief that the release was within the scope of the express authority given.  The fact remains, however, that the Plaintiffs gave authority to settle the case for a monetary amount and the ability to work in Millbrook and did not agree to the provisions of the release which only gave Nelson the right to apply for the right to work, which could be denied.  The Motion to Enforce Settlement is due to be DENIED.

In the last sentence of the Plaintiffs' Motion for Relief, they have asked the court to remove an attorneys lien placed on future proceeds that the Plaintiffs might receive.  This is not a request properly before this court in this case at this time.

The representation having been made at the evidentiary hearing that the current attorneys for the Plaintiffs have been retained for only the limited purpose of defending against the Motion to Enforce, the court will give the Plaintiffs additional time in which to seek counsel for the litigation of this case.

## IV. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Plaintiffs' Motion for Relief From Judgment (Doc. #58) is GRANTED and the Order dismissing the case with prejudice and denying the Motion for Summary Judgment as moot  (Doc. #40) is SET ASIDE.

2.  The Motion to Enforce Settlement Agreement (Doc. #41) is DENIED.

3.  The Motion to Interplead Funds (Doc. #50) is DENIED as moot.

4.  Attorneys Kammie B. Lee and John Davis Norris are relieved from any further representation of the Plaintiffs as their attorneys of record in this case.

5.  The Plaintiffs are given until May 24, 2013 to retain counsel and have counsel enter an

appearance on their behalf for the litigation of this case, or to file Notice that they wish to

represent themselves *pro se*.  In the event they do neither, the case will be dismissed for failure to

prosecute.

      6.  The Defendants' Motion for Summary Judgment, which is now outstanding, will be

under submission for determination on May 24, 2013.

      7.  All deadlines which have not expired under the outstanding Uniform Scheduling

Order are set aside, to be reset at a later date, if appropriate.

      8.  The General Release of All Claims and Indemnity Agreement, which was marked as

Defendants' Exhibit 1 for identification, but not admitted, is SEALED.

Done this 26th April, 2013.

                      /s/ W. Harold Albritton
                      W. HAROLD ALBRITTON
                      SENIOR UNITED STATES DISTRICT JUDGE